**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MIGUEL VILLANUEVA also known as
MIGUEL FONTANEZ,
                        Plaintiff,

v.                                       No. 08-CV-1139
                                                         (DNH/DRH)

V. BALDWIN, Nurse Administrator, Coxsackie
Correctional Facility; and JON MILLER, M.D.,
Facility Health Service Director, Coxsackie
Correctional Facility,
                        Defendants.

---

**APPEARANCES:**                               **OF COUNSEL:**

MIGUEL VILLANUEVA, also know as
    Miguel Fontanez
Plaintiff Pro Se
AMKC
18-18 Hazen Street
East Elmhurst, New York 11370

HON. ANDREW M. CUOMO               JUSTIN C. LEVIN, ESQ.
New York State Attorney General           Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Miguel Villanueva (Villanueva"), formerly an inmate in the custody of the

New York State Department of Correctional Services ("DOCS"), brings this action pursuant

to 42 U.S.C. § 1983 alleging that defendants, two DOCS employees, violated his

---

      [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

constitutional rights under the Eighth Amendment. Compl. (Dkt. No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 22. Villanueva opposes the motion. Dkt. No. 23.[2] For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

The facts are related herein in the light most favorable to Villanueva as the non-moving party. See Subsection II(A) infra.

On January 19, 2008, while incarcerated in Arthur Kill Correctional Facility (Arthur Kill"), Villanueva was prescribed Morphine Sulfate, or M.S. Contin, a narcotic for pain. Compl. ¶¶ 1, 4. On March 3, 2008, Villanueva was transferred to Coxsackie Correctional Facility ("Coxsackie"). Id. ¶ 3. On March 4, upon arrival at Coxsackie, Villanueva was screened by the medical department whereupon Villanueva disclosed a history of seizures and asthma, reported current prescriptions as Dilantan, Neurotin, and M.S. Contin, and requested new orders for pain medication. Miller Decl. (Dkt No. 22-5 at 1-7) ¶¶ 9-12, Dkt No. 22-5, Ex. A at 9[3]; Baldwin Decl. (Dkt. No. 22-6 at 1-5) ¶¶ 9-12; Dkt. No. 23 at 12. During the screening

---

[2] Villanueva's opposition to the present motion was filed a month late. See Dkt. No. 24 at 1; Docket Entry for August 18, 2009. While adherence to deadlines is essential in the judicial process, as Villanueva's response was submitted well before the undersigned's review of the present motion, it caused no delay or prejudice to the opposing party and has been reviewed. Similarly, though Villanueva's response to defendants' material statement of facts was also improperly completed, the plethora of submissions of both sides allow for evaluation of the present claim despite the failure to comply with the local rules.

[3] This exhibit is also attached to the Baldwin Declaration. See Dkt. No. 22-6, Ex. A. Accordingly, to avoid unnecessary repetition, citation will be made only to the exhibit submitted with Miller's Declaration.

interview, medical staff also recorded that Villanueva suffered a gun shot wound to his left foot with subsequent toe amputation and gangrene.  Miller Decl. ¶ 10; Baldwin Decl. ¶ 10.  Villanueva's primary complaints were of chronic back, foot, and knee pain.  Miller Decl. ¶ 12; Dkt. No. 22-5, Ex. B at 11[4]; Baldwin Decl. ¶ 12; Dkt. No. 23 at 20.  Villanueva was placed on the list to see a medical doctor.  Miller Decl. ¶ 13, Baldwin Decl. ¶ 13.

Defendant Dr. Jon Miller, the Health Services Director at Coxsackie, reviewed Villanueva's medical record later that day and prescribed him Dilantin, Neurontin, Albuterol, and Flovent.  Miller Decl. ¶ 14; Dkt. No. 22-5, Ex. C at 13-14.  Dr. Miller did not prescribe Villanueva M.S. Contin for pain relief because he "found no clear objective evidence to continue [him] on [it]."  Miller Decl. ¶ 15.  First, the dose of M.S. Contin that Villanueva received at Arthur Kill "[wa]s a low dose for the drug and [wa]s in the clinical range of discontinuance;" thus, presenting no object possibility for withdrawal symptoms.  Id. ¶¶ 39-40.  Additionally, M.S. Contin contains morphine and "presents a dangerous risk that the patient will develop a dependence to it," so Dr. Miller instead prescribed Neurontin[5], an alternative medication which "does not present the same significant risk of addiction . . . .", to control Villanueva's chronic pain.  Id.  ¶¶ 16-17, 19.

Villanueva visited the infirmary on March 5, 6, 10, 12, and 13 complaining of chronic pain and withdrawal symptoms of a runny nose, aches, headaches, and congestion.

---

[4] This exhibit is also attached to the Baldwin Declaration.  See Dkt. No. 22-6, Ex. B.  Accordingly, to avoid unnecessary repetition, citation will be made only to the exhibit submitted with Miller's Declaration.

[5] "Neurotin . . . has been found useful for neuropathic and chronic pain.  This works by stabilizing the neural pathways that conduct pain, decreasing the transmission of pain signals."  Miller Decl. ¶ 18.

Compl. ¶¶ 6-8, 12. Medical entries confirm that Villanueva attended sick call on March 10, 12, and 13, complaining of severe pain in his back, knee, and foot and requesting narcotic pain medication. Miller Decl. ¶ 20; Dkt. No. 22-5, Ex. D at 17;[6] Baldwin Decl. ¶ 14; Dkt. No. 23 at 11. On March 13, 2008, Villanueva also requested a transfer and medication to combat the side effects Villanueva attributed to withdrawal. Miller Decl. ¶ 21; Dkt. No. 22-5, Ex. D at 17; Baldwin Decl. ¶ 15. Ultimately, Dr. Miller concluded that Villanueva's reported "symptoms of withdrawal . . . [we]re not specific to narcotic withdrawal. Indeed, such symptoms describe the common cold." Miller Decl. ¶¶ 43-44. Villanueva was informed that he was scheduled to see a physician and received Medicidin-D, an over-the-counter cold and allergy medication which treated pain, fever, and nasal congestion. Miller Decl. ¶ 23; Baldwin Decl. ¶¶ 17-18.

Dr. Miller examined Villanueva on March 18, 2008. Miller Decl. ¶ 25; Compl. ¶ 13; Dkt. No. 22-5, Ex. E at 19[7]; Baldwin Decl. ¶ 21. Villanueva continued to complain of chronic pain in his back, foot, and knee. Miller Decl. ¶ 25; Dkt. No. 22-5, Ex. E at 19; Baldwin Decl. ¶ 22. Dr. Miller ordered that Villanueva be "housed on the first floor of [Coxsackie] and limit[ed] or exclude[d] . . . from having to climb stairs in the facility." Miller Decl. ¶ 28; Baldwin Decl. ¶¶ 25-26. Additionally, Dr. Miller prescribed Ultram, a medication "for the management of moderate to moderately severe chronic pain in adults who need around-

---

[6] This exhibit is also attached to the Baldwin Declaration. See Dkt. No. 22-6, Ex. C. Accordingly, to avoid unnecessary repetition, citation will be made only to the exhibit submitted with Dr. Miller's Declaration.

[7] This exhibit is also attached to the Baldwin Declaration. See Dkt. No. 22-6, Ex. D. Accordingly, to avoid unnecessary repetition, citation will be made only to the exhibit submitted with Dr. Miller's Declaration.

4

the-clock treatment of their pain for an extended period of time." Miller Decl. ¶¶ 29-30; Dkt. No. 22-5 at 14. Lastly, Dr. Miller referred Villanueva for evaluations by orthotics and physical therapy and ordered x-rays of his lower back and knee. Miller Decl. ¶ 31; Baldwin Decl. ¶ 24. Again, after the evaluation, Dr. Miller saw no "clinical indication for the use of M.S. Contin." Miller Decl. ¶ 32; Baldwin Decl. ¶ 27. Dr. Miller's decision was based on the fact that Villanueva was not required to walk long distances on Coxsackie's campus, Dr. Miller and the medical staff had all witnessed Villanueva's ability "to ambulate without difficulty and quite briskly," and the medical staff's twice-daily observations that Villanueva did not objectively seem to be suffering from either withdrawal or chronic pain. Miller Decl. ¶¶ 33-38, 53; Baldwin Decl. ¶¶ 28-32.

On April 28, 2008, Villanueva had a consultation visit for his complaints of pain. Dkt. No. 23 at 19. The consulting physician recommended custom orthotic inserts for Villanueva's shoes, suggested a gradual increase in the amount of Neurotin Villanueva was receiving, and commented that a "change from Ultran to M.S. Contin **could be considered**." Dkt. No. 23 at 19 (emphasis added). Additionally, a grievance decision dated May 15, 2008, denying Villanueva's claims of deliberate medical indifference commented that "[a]dditional diagnostic studies have failed to provide objective medical justification for an increase in pain medication." Dkt. No. 23 at 16; Dkt. No. 22-4, Ex. F at 25. This action followed.

## II. Discussion

Villanueva asserts that defendants violated his Eighth Amendment rights by failing

5

immediately to provide him with medical attention from a physician and being deliberately indifferent to his chronic pain by failing to order him more narcotic pain medication. Defendants argue that Villanueva's constitutional claims are meritless and that defendants are entitled to qualified immunity.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must

afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition extends to the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting

Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate.  Chance, 143 F.3d at 703.  Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim."  Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

In this case, defendants do not challenge that Villanueva's chronic pain constituted a serious medical need.  Without deciding that issue, based on the medical evidence submitted, it is clear that defendants were not deliberately indifferent to Villanueva's pain.

First, the record belies any allegations of defendants failing to treat Villanueva.  Upon arrival at Coxsackie, Villanueva received a medical examination by medical staff and later

8

that night Dr. Miller also reviewed his records and prescribed him with medication to treat all of his ailments, including his chronic pain. Miller Decl. ¶¶ 9-13; Dkt No. 22-5, Ex. A at 91; Baldwin Decl. ¶¶ 9-12; Dkt. No. 23 at 12. With the exception of two days, March 5 and 6, when Villanueva put in for a sick call, he was seen and evaluated by medical staff. Miller Decl. ¶ 20; Dkt. No. 22-5, Ex. D at 17; Baldwin Decl. ¶ 14; Dkt. No. 23 at 11. Within two weeks of his arrival Villanueva received an appointment with Dr. Miller, whereupon Miller evaluated Villanueva, ordered restrictions for his housing and movement, ordered diagnostic testing and referrals, and prescribed additional pain medication to assist in alleviating Villanueva's complaints. Miller Decl. ¶¶ 25, 28-31; Baldwin Decl. ¶¶ 21-22, 24-27. Such actions refute a claim of deliberate failure to treat an inmate.

Additionally, to the extent Villanueva contends he did not receive appropriate medical treatment for his withdrawal or cold symptoms, such arguments are contradicted by the record. Villanueva's only documented complaints of congestion, aches, and pains occurred on March 13. Miller Decl. ¶ 21; Dkt. No. 22-5, Ex. D at 17; Baldwin Decl. ¶ 15. On that date, Villanueva requested, and was provided with, cold and allergy medication which alleviated his symptoms. Miller Decl. ¶ 21; Dkt. No. 22-5, Ex. D at 17; Baldwin Decl. ¶ 15. The instant provision of the requested medicine, and its effectiveness, disprove any intent to deny or delay medical treatment.

Furthermore, to the extent that Villanueva's medical treatment was delayed, such allegations are untenable. Villanueva's complaints that he did not receive medical intervention immediately upon his request are insufficient to sustain an Eighth Amendment claim. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to

9

have for themselves. The essential test is one of medical necessity and not one simply of desirability.") (internal quotation marks and citations omitted). Any complaints that Villanueva should have received an appointment with Dr. Miller whenever he demanded or should have been prescribed a narcotic are meritless. Id.

Allegations that Villanueva should have been receiving one pain reliever over another are also insufficient to allege a constitutional violation. At best, Villanueva's claims that he should have continued to receive a low-level narcotic instead of a non-narcotic drug essentially asserts a difference in opinion as to the appropriate medication for pain relief. Such differences in opinions do not support an Eighth Amendment allegation. Sonds, 151 F. Supp. 2d at 312. Furthermore, it should be noted that even when Villanueva received an additional medical consultation, M.S. Contin was only a potential recommendation for treatment. Dkt. No. 23 at 19. Such contentions belie Villanueva's allegations that M.S. Contin was the only adequate form of pain relief available for him. These arguments are also negated by the objective observations by witnesses who viewed Villanueva on multiple occasions having no difficulty effectively ambulating and the later diagnostic test results, referenced in the grievance denial, which failed to provide any objective medical explanation for Villanueva's subjective complaints. Miller Decl. ¶¶ 33-38, 53; Baldwin Decl. ¶¶ 28-32; Dkt. No. 23 at 16; Dkt. No. 22-4, Ex. F. at 25. Therefore, no questions of fact have been shown by Villanueva as to whether the medical treatment Villaneuva received complied with constitutional guarantees as it was appropriate and timely.

Accordingly, defendants' motion for summary judgment should be granted.

## C. Qualified Immunity

Defendants claim that even if Villaneuva's constitutional claims are substantiated, they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525, at *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached concerning Villanueva's claims because, as discussed supra, accepting all of Villanueva's allegations as true, he has not shown that any of defendants violated his constitutional rights.

Accordingly, in the alternative, defendants' motion should be granted on this ground.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 22) be **GRANTED** and that judgment be granted to both defendants on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 4, 2010
       Albany, New York

_____
David R. Homer
U.S. Magistrate Judge